**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 2 9 2025

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
### Central Division

| | | |
|---|---|---|
| DENISHA HUDGINS and MARION BOVAN, individually and on behalf of all others similarly situated, | : : : : | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| Plaintiff, | : : | **JURY TRIAL DEMANDED** |
| | : : | Case No: 4:25-cv-00523-JM |
| v. | : : | Hon. |
| WINDSTREAM SERVICES, LLC, | : : : | |
| Defendant. | : : : | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs, Denisha Hudgins and Marion Bovan ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned attorneys, hereby brings this Class and Collective Action against Windstream Services, LLC, ("Defendant") to recover unpaid wages, liquidated damages, interest, attorney's fees, costs, and other relief as appropriate under the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.*, the Illinois Minimum Wage Law ("IMWL"), §§ 820 ILCS 105/1, *et seq.*, the Illinois Wage Payment and Collection Act ("IWPCA"), §§ ILCS 115/1, *et seq.*, and the common law. Plaintiffs allegations herein are based upon knowledge as to matters relating to themselves and upon information and belief as to all other matters:

This case assigned to District Judge _Moody_
and to Magistrate Judge _Kearney_

1

## JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq*.

2.      Additionally, this Court has jurisdiction over Plaintiffs' collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

3.      Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendant's employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

4.      Plaintiff's state law, breach of contract and unjust enrichment claims originate from the same facts that form the basis of her federal claims. Thus, the Court has supplemental jurisdiction over Plaintiff's state law, breach of contract and unjust enrichment claims pursuant to 28 U.S.C. §1367.

5.      Venue lies in this District pursuant to 28 U.S.C. § 1391 because the Defendant conducts business within the State of Arkansas and maintains its principal place of business in this District and is subject to personal jurisdiction in this District.

## PARTIES

6.      Plaintiff, Denisha Hudgins ("Plaintiff Hudgins"), is an adult resident of Cedartown, Georgia and was employed by Defendant as a remote Inside Account Executive between May 2023 and March 2024. Plaintiff Hudgins's consent to join form is attached as **Exhibit A**.

7.      Plaintiff, Marion Bovan ("Plaintiff Bovan"), is an adult resident of Peoria, Illinois and was employed by Defendant as a Customer Service Representative from November 4, 2014 to May 31, 2024. Plaintiff Bovan's consent to join form is attached as **Exhibit B**.

8.      Additional putative Collective members were or are employed by Defendant in the United States as hourly employees during the past three years and their consent forms will also be filed in this case.

9.      Defendant, Windstream Services, LLC, is a foreign limited liability company with its principal place of business located in Arkansas at 4005 N. Rodney Parham Road, Little Rock, Arkansas 72212.

10.     Defendant's registered agent is Registered Agent Solutions, Inc., with a registered address of 4250 N. Venetian Lane, Fayetteville, Arkansas 72703. Defendant employs hundreds of agents as hourly employees across the United States.

## GENERAL ALLEGATIONS

11.     On or about May 2023, Defendant hired Plaintiff Hudgins as an hourly

3

non-exempt employee. Plaintiff worked remotely from her home in Cedartown, Georgia. Plaintiff Hudgins's most recent base rate of pay was $19.00 per hour.

12.    On or about November 4, 2014, Defendant hired Plaintiff Bovan as an hourly non-exempt employee. Plaintiff Bovan worked as a customer service representative in Illinois and was paid at a rate of $14.00 per hour.

13.    As non-exempt employees, Defendant's hourly employees were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

14.    On information and belief, Defendant hired hundreds of hourly employees with similar job duties to Plaintiffs in the past three years. These employees carried a variety of job titles including but not limited to "Customer Service Representative" and "Account Executive." These similarly situated employees will hereinafter be referred to as "Agents."

15.    Throughout their employment with Defendant, Plaintiffs and the other Agents' job duties included making outbound calls to sell customized technology solutions to new and existing Windstream customers.

16.    Once hired, Defendant provided all Agents with training on, inter alia, how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time; the importance of attendance and schedule expectations;

4

and Defendant's policies related to each topic. The training Defendant's Agents received was substantially, if not entirely, the same and all Agents were subject to the same disciplinary policies.

17.    Plaintiffs and other similarly situated Agents were instructed to be "phone ready" the moment their scheduled shift starts. This required Defendant's Agents to be logged in and have loaded their essential work-related computer programs and applications at the start of their shifts so they could be prepared to take calls the moment their shifts began. An Agent's failure to be "phone ready" could result in poor performance evaluations, warnings, discipline, and possibly termination. Thus, Defendant forced its Agents to perform the boot-up and login process before clocking into Defendant's timekeeping system.

18.    All of Defendant's Agents used the same or similar computer networks, software, programs, and applications while performing their job responsibilities. These programs and applications were an integral and indispensable part of the Agents' work, and they could not perform their jobs without them.

19.    To perform their job duties, Plaintiffs and all other Agents were required to boot up and log into various computer networks, software programs and applications, in order to access information necessary to perform their job functions. However, Plaintiffs and all other Agents were instructed to not actually "clock in"

for their shifts until after the computer boot-up and login process is complete or nearly complete.

20.    Plaintiffs and all other similarly situated Agents were also trained or instructed to "clock out" before closing all work applications and systems to make certain they are "clocked out" the moment they are done fielding calls.

21.    The pre- and post-shift off-the-clock time Plaintiffs and all other Agents spent booting up, logging in, and logging off their computers directly benefited Defendant and was integral and indispensable to the Agents' job responsibilities.

22.    Despite knowing Plaintiffs and all other Agents performed this pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

23.    Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiffs and all other Agents booted up and logged into their computers each day, along with the time they logged into their telephone systems.

24.    Because Defendant required its Agents to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system were and are inaccurate representations of the total amount of time Agents spent working for Defendant. Thus, the hours reflected on the Agents' paystubs are inaccurate representations of the hours they worked.

25.     Defendant's Agent positions typically had schedules that required employees to work at least eight (8) hours per day (with a sixty (60) minute unpaid meal period), on average five (5) days each week, and up to forty (40) hours or more in a workweek. However, in some workweeks, Defendant's Agents worked less than forty (40) hours in a week and in other weeks they work more than forty (40) hours. If Defendant's Agents strictly adhered to Defendant's baseline forty (40) hour schedule, the Agent schedule resulted in Agents working uncompensated overtime on a weekly basis.

26.     Despite its ability to track the amount of time Plaintiffs and other Agents spend in connection with the pre- and post-shift boot-up, login, and log-out processes, Defendant failed to pay Plaintiffs and other Agents for the off-the-clock work they performed each shift, thus breaching its contracts with or being unjustly enriched by its Agents.

27.     Plaintiffs and similarly situated Agents regularly worked overtime and non-overtime hours leading up to overtime hours ("overtime gap time") for which they were not paid.

28.     During the weeks that Agents do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of straight-time wages, in breach of Defendant's contracts with its Agents or resulting in Defendant's unjust enrichment along with uncompensated overtime gap time.

7

### A. Pre-Shift Off-the-Clock Work

29.    Like most call centers, Defendant maintained detailed attendance and schedule adherence policies and used them to evaluate its Agents' job performance.

30.    Defendant used its attendance/schedule adherence policies to require its Agents to arrive early and work off-the-clock so they can be "phone ready" at the start of their shifts.

31.    Throughout their employment with Defendant, Plaintiffs and other Agents were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

32.    Upon arriving to their computers, Defendant's Agents were trained and required to follow a specific protocol to start up and log into the company's computer network and numerous software programs to access the necessary information to perform their work.

33.    The pre-shift boot-up and login process generally consisted of the following steps:

  a.  The Agents turned on or woke up their computer;

  b.  The Agents then logged into their computer;

  c.  The Agents then completed multi-factor authentication to sign in to the company VPN;

d. The Agents then opened a tracker application and several other company applications;

e. The Agents then opened the Microsoft Teams application;

f. The Agents could then clock in through the "5-9" application at the start of their scheduled shift time when they were ready to start making calls.

34. The boot-up and login process described above took substantial time each shift, up to twenty (20) minutes per shift, or more, depending on how fast/slow the computers and programs were operating.

35. Agents were required to complete each of these tasks prior to "punching in," as Agents could not be "phone ready" until these tasks were complete.

36. Defendant's Agents did not actually "clock in" for their shifts until the start of their scheduled shifts; meaning that Plaintiff and all other Agents worked off-the-clock for up to twenty (20) minutes (or more) before each shift for which they were never compensated.

37. If Agents arrived immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be "phone ready" when their scheduled shifts began, and they would therefore receive a tardy on their records and poor schedule adherence scores.

38. Because Defendant's Agents typically worked scheduled shifts of at least forty (40) hours per week, their required pre-shift work was nearly always

overtime work, compensable at 1.5 times their regular rate of pay.

39.    Defendant had express and constructive knowledge that its Agents began the pre-shift boot-up and login process while off-the-clock to make sure they were "phone ready" and "clocked in" on time.

40.    Defendant's Agents were not compensated for any of this time because Defendant prohibited Agents from clocking into its timekeeping software before the start of their scheduled shifts.

41.    The pre-shift off-the-clock work performed by Agents directly benefited Defendant and was integral and indispensable to their job duties and responsibilities as Agents.

**B. Post-Shift Off-the-Clock Work**

42.    Pursuant to Defendant's policies, training, and direction, Plaintiffs and all other Agents were required to "clock out" of Defendant's timekeeping system before closing all work applications and systems to make certain they are "clocked out" the moment they stop fielding calls.

43.    Additionally, Plaintiff and all other agents were required to draft emails to management personnel after each shift regarding their daily sales performance after clocking out.

44.    The off-the-clock post-shift process took substantial time on a daily basis, with said time ranging from ten (10) to twenty (20) minutes per shift.

45.    Defendant's Agents were also not paid for their post-shift off-the-clock work.

46.    The post-shift off-the-clock work Plaintiffs and other Agents performed is compensable, directly benefited Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as Agents.

47.    At all relevant times, Defendant required and directly benefited from the off-the-clock work performed by Plaintiffs and all other Agents in connection with pre-shift and post-shift activities described above.

48.    At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiffs and all other Agents.

49.    At all relevant times, Defendant has been able to track the amount of time Plaintiffs, and all other Agents, spent in connection with pre-shift and post-shift activities; however, Defendant has failed to do so and has failed to compensate Plaintiffs and all other Agents for the off-the-clock work they performed.

50.    At all relevant times Plaintiffs and all other Agents have been non-exempt hourly employees, subject to the requirements of the FLSA.

51.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiffs and the other Agents in order to pressure them into

11

performing pre-shift and post-shift work off-the-clock.

52.    Defendant expressly trained and instructed Plaintiff and all other Agents to perform these off-the-clock work activities when they were not "clocked in" to Defendant's timekeeping system.

53.    Defendant instructed Agents to have all work applications and systems fully loaded before the start of their shifts, which took them up to twenty (20) minutes per day.

54.    Similarly, at the end of the shift, Defendant instructed Agents to clock out before closing all work applications and complete sales performance emails to make certain they are "clocked out" the moment they stop fielding calls, which took them in the range of ten (10) to twenty (20) minutes per day.

55.    At all relevant times, Defendant's policies and practices deprived Plaintiffs and the Agents of wages owed for off-the-clock pre-shift and post-shift activities they performed. Because Defendant's Agents typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay.

56.    Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiffs worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

57.    Defendant knew or should have known that the time spent by Plaintiffs

and other Agents in connection with the off-the-clock pre-shift and post-shift activities is compensable under the law.

58.    Despite knowing Agents performed off-the-clock work before and during their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

59.    Unpaid wages related to the off-the-clock work described herein are owed to Plaintiffs at their regular hourly rates for the overtime gap time hours and at the FLSA mandated overtime premium of one and one-half the Plaintiffs' regular hourly rates for the hours Plaintiffs worked in excess of forty (40) hours in a workweek.

60.    As a result of these *prima facie* FLSA violations, Defendant is liable to Plaintiffs and those similarly situated for unpaid wages, liquidated damages, reasonable attorney's fees and costs, interest, and any other relief deemed appropriate by the Court.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

61.    Pursuant to 29 U.S.C § 216(b), Plaintiffs bring this action on behalf of themselves and on behalf of:

> ***All current and former hourly call center agents who worked for Defendant at any time during the past three years.***

62.    Plaintiffs and putative Collective members are "similarly situated" as that term is used in 29 U.S.C § 216(b) because, among other things, all such individuals were not properly compensated for all hours worked.

63.    Upon information and belief, Defendant utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

64.    Resolution of this action requires inquiry into common facts.

65.    These similarly situated individuals are known to the Defendant, are readily identifiable, and can be located through Defendant's payroll records, which Defendant is required to maintain pursuant to the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. § 516 *et seq*.

66.    Conditional certification of this case as a collective action pursuant to 29 U.S.C § 216(b) is proper and necessary so that these employees may be readily notified of this action through direct U.S. mail, email and text messaging for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages and/or interest, and attorneys' fees and costs under the FLSA.

67.    Upon information and belief, there are hundreds of similarly situated current and former employees of Defendant who were not paid their required wages and who would benefit from the issuance of court-authorized notice of this lawsuit and the opportunity to join it.

## RULE 23 ILLINOIS STATE LAW CLASS ACTION ALLEGATIONS

68.    Plaintiff Bovan brings this action pursuant to Fed R. Civ. P. 23(b)(2) and (b)(3) on behalf of:

> *All current and former hourly call center agents who worked for Defendant in Illinois at any time during the past three years.*

(hereinafter referred to as the "Rule 23 Illinois Class"). Plaintiff Bovan reserves the right to amend this definition if necessary.

69.    The members of the Rule 23 Illinois Class are so numerous that joinder of all Rule 23 Illinois Class members in this case would be impractical. Plaintiff Bovan reasonably estimates there are dozens, if not hundreds, of Rule 23 Illinois Class members. Rule 23 Illinois Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

70.    There is a well-defined community of interests among Rule 23 Illinois Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Illinois Class. These common legal and factual questions include, but are not limited to, the following:

a. Whether Rule 23 Illinois Class members performed unpaid pre- and post-shift work activities, and if so, whether such work activities are compensable; and

b. Whether Rule 23 Illinois Class members are owed wages for time spent performing pre- and post-shift work activities, and if so, the appropriate amount thereof.

71.    Plaintiff Bovan's claims are typical of those of the Rule 23 Illinois

Class in that she and all other Rule 23 Illinois Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Illinois Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Illinois Class members.

72.     Plaintiff Bovan will fully and adequately protect the interests of the Rule 23 Illinois Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Illinois Class.

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Illinois Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

74.     This case will be manageable as a Rule 23 class action. Plaintiff Bovan and her counsel know of no unusual difficulties in this case and Defendants have advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

75.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

76.    Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Illinois Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Illinois Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COMMON LAW RULE 23 CLASS ACTION ALLEGATIONS

77.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former hourly call center agents who worked for Defendant at any time during the past three years.*

(hereinafter referred to as the "Rule 23 Class"). Plaintiffs reserve the right to amend this definition if necessary.

78.    The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

79.    There is a well-defined community of interests among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following: whether Defendant's non-payment of wages for all compensable time breached Plaintiffs' and Agents contracts or unjustly enriched Defendant.

80.    Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Class members.

81.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and they retained counsel who are qualified and experienced in the prosecution of wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

82.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with

the fear of reprisal by their employer.

83.   This case will be manageable as a Rule 23 Class action. Plaintiffs and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

84.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

85.   Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. – FAILURE TO PAY OVERTIME**

86.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

87.   At all times relevant to this action, Defendant was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

88.    Defendant is engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

89.    At all times relevant to this action, Plaintiffs and the proposed Collective members were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

90.    Plaintiffs and the proposed Collective members, by virtue of their job duties and activities, are all non-exempt employees and were classified as such.

91.    Plaintiffs and the proposed Collective members were either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

92.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

93.    At all times relevant to this action, Defendant required Plaintiffs and the proposed Collective members to regularly perform up to twenty (20) minutes or more of pre-shift computer boot-up and login time per shift, and ten (10) to twenty (20) minutes or more post-shift computer shut down and performance reporting time per shift, but failed to pay these employees the federally mandated wages and overtime compensation for all services performed.

94.    All of the off-the-clock worked performed by Plaintiffs and the proposed Collective members could have easily been tracked and recorded by Defendant, but was not.

95.    In the aggregate, the amount of Plaintiffs' and the proposed Collective members' uncompensated time amounted to hours of uncompensated time per week and, over the three-year statutory period, was substantial.

96.    In workweeks where Plaintiffs and the proposed Collective members worked forty (40) hours or more, the uncompensated pre- and post-shift off-the-clock work should have been paid at the federally mandated rate of 1.5 times each employee's regular rate of pay. 29 U.S.C. § 207.

97.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have easily determined how long it took for its Agents to complete the pre-shift boot-up and log-in process as well as the post-shift shutdown and performance reporting process, and Defendant could have properly compensated Plaintiffs and the proposed Collective members for the boot-up, login, shutdown, and performance reporting work they performed, but did not. Likewise, Defendant knew or could have easily determined how to perform the correct FLSA regular rate calculations.

98.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, Plaintiffs and the proposed Collective members are entitled to their unpaid

overtime gap time wages and unpaid overtime, plus an additional equal amount in liquidated (double) damages, plus costs and reasonable attorneys' fees.

**COUNT II**
**RULE 23 ILLINOIS CLASS ACTION**
**VIOLATION OF ILLINOIS MINIMUM WAGE LAW (IMWL"),**
**§§ 820 ILCS 105/1, *et seq*. AND ILLINOIS WAGE PAYMENT AND**
**COLLECTION ACT ("IWPCA"), §§ ILCS 115/1, *et seq*.**

99.    Plaintiff Bovan re-alleges and incorporates all previous paragraphs herein.

100.    At all times relevant to the action, Defendant was an employer covered by the mandates of the IMWL, and Plaintiff Bovan and the Rule 23 Illinois Class were employees entitled to the IMWL's protections. *See* §§ 820 ILCS 105/3(c)-(d).

101.    The IMWL, §§ 820 ILCS 105/1, *et. seq*. requires employers to pay their employees minimum wages and time-and-a-half their regular rate of pay for hours worked in excess of forty (40) per week. *See* §§ 820 ILCS 105/4; 820 ILCS 105/4a.

102.    820 ILCS 105/12(a) provides that an employee who is not paid in accordance with the Illinois Minimum Wage Law "may recover in a civil action treble the amount of any such underpayments together with costs and such reasonable attorney fees as may be allowed by the Court, and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid." § 820 ILCS 105/12(a).

103.    The IWPCA "applies to all employers and employees in [Illinois], ...

but excepting employees of the State or Federal governments." *See* §§ 820 ILCS 115/1. Plaintiff Bovan and the Rule 23 Illinois Class members were not employees of the State or Federal government, therefore, they are entitled to the protections of the IWPCA.

104.   Under 820 ILSC 115/4, "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned."

105.   Under 820 ILSC 115/5, "every employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee."

106.   As discussed herein, Defendant had a binding and valid contract with Plaintiff Bovan and every other Rule 23 Illinois Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate, plus any overtime pay required by applicable law, in consideration of the work duties Plaintiff Bovan and the Rule 23 Illinois Class members performed on Defendant's behalf.

107.   For example, Defendant offered to compensate Plaintiff Bovan at a minimum of $14.00 per hour, plus any overtime pay required by applicable law, if she agreed to perform services for Defendant as an Hourly Employee. Plaintiff Bovan accepted Defendant's offer and performed under the contract by fulfilling her

duties as an Hourly Employee, which included, but was not limited to, the pre- and post-shift work activities required of her, in reliance on the offer.

108.   Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for Hourly Employee work, which Plaintiff Bovan and the Rule 23 Illinois Class accepted and performed, including the unpaid pre- and post-shift work activities described herein, but Defendant failed to perform by paying Plaintiff and the Rule 23 Illinois Class the promised wages for all work.

109.   Upon information and belief, each Rule 23 Illinois Class member, including Plaintiff Bovan, was contractually entitled to a minimum hourly rate of pay per hour within the applicable period, in addition to applicable overtime premiums.

110.   Plaintiff Bovan and every other Rule 23 Illinois Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

111.   Defendant breached its contractual promises by failing to pay Plaintiff Bovan and the Rule 23 Illinois Class for all wages (regular and overtime) owed.

112.   Plaintiff Bovan and the Rule 23 Illinois Class also did not receive

accurate wage statements that detailed each hour worked and their rate of pay because Defendants failed to include the compensable time discussed herein in the paystubs provided to Plaintiff Bovan and the Rule 23 Illinois Class.

113.    Additionally, 820 ILCS 115/14(a) provides that an employee aggrieved by an employer's violation of the Illinois Wage Payment and Collection Act "shall be entitled to recover through a claim filed with the Department of Labor or in a civil action, but not both, the amount of any such underpayments and damages of 5% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid. In a civil action, such employee shall also recover costs and all reasonable attorney's fees."

114.    Defendant violated the IMWL and the IWPCA by regularly and repeatedly failing to compensate Plaintiff Bovan and the Rule 23 Illinois Class for the time spent on the work activities described in this Complaint.

115.    As a result, Plaintiff Bovan and the Rule 23 Illinois Class have and will continue to suffer loss of income and other damages. Accordingly, Plaintiff Bovan and the Rule 23 Illinois Class are entitled to recover unpaid wages owed, liquidated damages, costs and attorneys' fees, and other appropriate relief under the IMWL at an amount to be proven at trial.

## COUNT III
### (Rule 23 Class Action)
### BREACH OF CONTRACT

116.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

117.   Defendant had binding and valid contracts with Plaintiffs and the Rule 23 Nationwide Class to pay for each hour worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class performed on behalf of Defendant.

118.   Plaintiffs and the Rule 23 Nationwide Class earned pre-established hourly rates.

119.   Plaintiffs and the Rule 23 Nationwide Class accepted the terms of Defendant's contractual promises and performed under the contract by doing the job and carrying out the work performed each shift including the unpaid off-the-clock work that was required in connection with pre-shift work activities, described herein.

120.   By not paying Plaintiffs and the Rule 23 Nationwide Class the agreed upon hourly wage for the off-the-clock work performed, Defendant breached its contracts with Plaintiffs and the Rule 23 Nationwide Class.

121.   Plaintiffs and the Rule 23 Nationwide Classes remedies under the FLSA are inadequate in this case to the extent Defendant paid Plaintiff and the Rule 23 Nationwide Class more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., a pure "gap time" claim).

122.    Defendant also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and the Rule 23 Nationwide Class spent performing off-the-clock activities.

123.    As a direct and proximate result of Defendant's contractual breach, Plaintiffs and the Rule 23 Nationwide Class were damaged in an amount to be determined at trial.

**COUNT IV**
**(Rule 23 Class Action)**
**UNJUST ENRICHMENT**

124.    Plaintiffs incorporate paragraphs 1-115 as if fully restated herein and pleads this count in the alternative to Count II.

125.    At all times relevant to this action, Defendant promised Plaintiffs and every other Rule 23 Class member a pre-established base hourly rate in consideration of the work duties they performed on behalf of Defendant.

126.    Upon information and belief, each Rule 23 Class member, including Plaintiffs, was paid a base hourly rate.

127.    Plaintiffs and every other Rule 23 Class member relied upon Defendant's promise for the pre-established base hourly rate and performed by doing their jobs and carrying out the work they performed.

128.    By not paying Plaintiffs and every other Rule 23 Class member the promised base hourly wage for the work they performed each shift in connection with

all the work they performed, Defendant was unjustly enriched.

129.   Plaintiffs and the Rule 23 Class members performed pre- and post-shift work tasks at the request of and without objection by Defendant.

130.   Defendant received and accepted the above-referenced work services from Plaintiffs and every other Rule 23 Class member and enjoyed the benefits derived therefrom.

131.   Defendant was unjustly enriched by the retention of monies received pursuant to the work services Plaintiffs and the Rule 23 Class procured on behalf of Defendant, without having compensated Plaintiffs for the same.

132.   Plaintiffs and the Rule 23 Class suffered detriment as a result of Defendant's failure to compensate them for the work described herein, in that Plaintiff and the Rule 23 Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

133.   As a direct and proximate result of Defendant's actions, Plaintiffs and every other Rule 23 Class member have suffered damages, including, but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, request the following relief:

   a. An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims

set forth herein (Count I);

b.  An Order certifying this action as a class action (for the Rule 23 Illinois Class) pursuant to Rule 23(b)(3) with respect to Plaintiff Bovan's state law claims under the IMWL and IWPCA (Count II);

c.  An Order certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(3) with respect to Plaintiffs' breach of contract and unjust enrichment claims (Counts III and IV);

d.  An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names, addresses, email addressed and cell phone numbers of all FLSA Collective members, and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

e.  An Order designating Plaintiffs as representative of the FLSA Collective, and the Rule 23 Class, and undersigned counsel as class counsel for the same;

f.  An Order designating Plaintiff Bovan as representative of the Rule 23 Illinois Class, and undersigned counsel as class counsel for the same;

g.  An Order declaring Defendants violated the FLSA;

h.  An Order declaring Defendants' violations of the FLSA were willful;

i.  An Order declaring Defendants violated the Illinois wage-and-hour law;

j.  An Order declaring Defendants breached their contracts with Plaintiffs and the members of the Rule 23 Class (or, in the alternative, that Defendants was unjustly enriched) by failing to pay them for mandatory pre- and post-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

k. An Order granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs, the FLSA Collective, the Rule 23 Illinois Class, and the Rule 23 Class the full amount of damages and penalty damages available by law;

l. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiffs in prosecuting this action as required by statute;

m. An Order awarding pre- and post-judgment interest to Plaintiffs on these damages; and

n. An Order awarding such other and further relief as this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiffs and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.


Date: May 20, 2025                     Respectfully submitted,

                                       By: _____
                                       Matthew L. Turner (MI Bar No. P48706)
                                       Paulina R. Kennedy (MI Bar No. P84790)*
                                       **SOMMERS SCHWARTZ, P.C.**
                                       1 Towne Sq., 17th Floor
                                       Southfield, Michigan 48076
                                       (248) 355-0300
                                       mturner@sommerspc.com
                                       pkennedy@sommerspc.com
                                       *pro hac vice* motions to be filed

                                       *Attorneys for Plaintiff and the Proposed*
                                       *Class and Collective Members*

# Exhibit A

## **CONSENT TO JOIN**

1.   Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), I hereby consent to join and act as a plaintiff in the above-captioned lawsuit.

2.   I worked for Defendant(s) as a non-exempt employee and I agree to be bound by any adjudication or court rulings in this lawsuit, whether favorable or unfavorable. I understand that reasonable costs expended by Plaintiffs' counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiffs' counsel may petition the Court for an award of attorneys' fees from any settlement or judgment.

3.   I hereby designate Sommers Schwartz, P.C. to represent me in this lawsuit.

Signature: _____

Print Name:   Denisha Tichina Hudgins
_____

Date Signed:   07/01/2024
_____

# Exhibit B

## CONSENT TO JOIN

1.  Pursuant to the Fair Labor Standards Act, 29 U.S.C. §216(b), I hereby consent to join and act as a plaintiff in the above-captioned lawsuit.

2.  I worked for Defendant as an hourly non-exempt employee and I agree to be bound by any adjudication or court rulings in this lawsuit, whether favorable or unfavorable. I understand that reasonable costs expended by Plaintiffs' counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiffs' counsel may petition the Court for an award of attorneys' fees from any settlement or judgment.

3.  I hereby designate Sommers Schwartz, P.C. to represent me in this lawsuit.

Signature: _____

Print Name:    Marion bovan
_____

Date Signed:    03/18/2025
_____